UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------
G. M. M., a minor child by his mother
and natural guardian, NIKI HERNANDEZ-ADAMS,
and NIKI HERNANDEZ-ADAMS, individually,

        Civil Action No. 1:13-CV-05059

                        Plaintiffs,

            -against-

MARK KIMPSON,

                      Defendant.
--------------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT ON BEHALF OF PLAINTIFFS
BASED UPON VIOLATIONS OF LOCAL LAWS OF THE CITY OF
NEW YORK, 42 U.S.C. SECTION 4852d, GROSS NEGLIGENCE
AND LANDLORD'S WARRANTY OF HABITABILITY**

On the brief:
Stephen M. Cantor
Steven K. Frankel

                  Stephen M. Cantor
                  STEPHEN M. CANTOR, P.C.,
                  ATTORNEY AT LAW
                  325 Broadway, Suite 502
                  New York, New York 10007
                  Tel: (212) 732-8456
                  Fax: (212) 732-8460
                  Attorneys for Plaintiffs

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................... 1

BACKGROUND ............................................................................... 1

STANDARD OF REVIEW ..................................................................... 5

ARGUMENT .................................................................................... 6

    I.      MR. KIMPSON VIOLATED LOCAL LAWS
           AND SECTIONS OF THE ADMINISTRATIVE
           CODE OF THE CITY OF NEW YORK ...................................6

          A.  Section 27-2056.3 Owners'
                Responsibility to Remediate……………………………………6

          B.  Section 27-2056.18
                Based upon the Age of the Child…………………………….7

          C.  Section 27-2056.4 Owners'
                Responsibility to Notify
                Occupants and Investigate………………………………...9

          D.  Section 27-2056.4, c. Owners'
                Responsibility to Notify
                Occupants with Lease and Pamphlet……………………….11

          E.  Section 27-2056.5
                Presumption of Lead Paint……………………………….12

           F.  Section 27-2056.6
                Violation in a Dwelling Unit…………………………….13

          G.  Section 27-2056.8
                Violation in a
                Dwelling Unit upon Turnover…………………………….14

    II.     MR. KIMPSON VIOLATED 42 U.S.C.
           SECTION 4852d FOR FAILURE TO
           PROVIDE A LEAD HAZARD PAMPHLET…………………….15

    III.    MR. KIMPSON WAS GROSSLY
           NEGLIGENT FOR THE RENOVATION

OF 490 MACDONOUGH STREET…………………………………..16

IV.   MR. KIMPSON VIOLATED THE
LANDLORD'S WARRANTY OF
HABITABILITY CONTAINED
IN THE LEASE AGREEMENT……………………………………18

CONCLUSION……………………………………………………………….18

TABLE OF AUTHORITIES…………………………………………………iii

CASES…………………………………………………………………iii

RULES…………………………………………………………………iii

STATUTES……………………………………………………………..iv

EXHIBITS……………………………………………………………………v

DEPOSITION TRANSCRIPT PAGES……………………………………vi

**Table of Authorities**

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 252 (1986)……………………………………………………………………….6

*Celotex Corp. v. Catrett,*
477 U.S. 317, 323-24 (1986)………………………………………………………………..5

*Duarte v. Community Health Corp.,*
42 A.D.3d 480 (2d Dept. 2007)……………………………………………………………..8

*Fujitsu Ltd. V. Fed. Express Corp.,*
*247 F.3d 423, 428 (2d Cir. 2001)… … … … … … … … … … … … … … … …6*

*Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.,*
219 F.3d 104, 107 (2d Cir. 2000)……………………………………………………...5

*Heublein v. United States,*
996 F.2d 1455, 1461 (2d Cir. 1993)…………………………………………………..5

*In re September 11 Property Damage and Business Loss Litig.,*
468 F. Supp. 2d 508, 515 (S.D.N.Y. 2006)…………………………………………..6

*Juarez v. Wavecrest Mgt. Team,*
88 NY2d 628 (1996)………………………………………………………………..8

*Knight v. U.S. Fire Insurance Company,*
*804 F.2d 9, 11 (2d Cir. 1986)… … … … … … … … … … … …6*

*Matsushita Elec. Industr. Co. v. Zenith Radio Corp.,*
475 U.S. 574, 587-88 (1986)…………………………………………………………5

*Trans Sport, Inc. v. Starter Sportswear, Inc.,*
964 F.2d 186, 188 (2d Cir. 1992)…………………………………………………..6

**RULES**

Fed. R. Civ. P.56(c)…………………………………………………………………..5

**STATUTES**

15 U.S.C. 2686……………………………………………………………15

42 U.S.C. Section 4852d……………………………………………….…15

42 U.S.C. Section 4852d, (a) (1) (A)……………………………………...15

N.Y.C. Admin. Code, Art. 14, Section 17-179, b………………………… 10

N.Y.C. Admin. Code, Art. 14, Section 27-2056.3……………………….…6

N.Y.C. Admin. Code, Art. 14, Section 27-2056.4……………………….…9

N.Y.C. Admin. Code, Art. 14, Section 27-2056.4, c………………………11

N.Y.C. Admin. Code, Art. 14, Section 27-2056.5…………………………12

N.Y.C. Admin. Code, Art. 14, Section 27-2056.6…………………………13

N.Y.C. Admin. Code, Art. 14, Section 27-2056.8…………………………14

N.Y.C. Admin. Code, Art. 14, Section 27-2056.18………………………..7

N.Y.C. Health Code Section 3.09…………………………………………14

N.Y.C. Health Code Section 173.13………………………………………14

N.Y.C. Health Code Section 173.13 (d)(1)………………………………...11

N.Y.C. Health Code Section 173.14………………………………………14

N.Y.C. Health Code Section 173.14 (C) (1) (A)…………………………14

N.Y. MDW. Law Section 4…………………………………………………7

Toxic Substances Control Act, Section 406………………………………15

## PRELIMINARY STATEMENT

This motion is straightforward.  During his first year of life, as an infant and toddler, plaintiff G.M.M. ingested lead paint and/or lead dust, suffering severe injuries from lead poisoning while he resided with his parents in the Ground Floor apartment of a multiple dwelling owned by the defendant, an experienced landlord for more than twenty years.  The defendant acted as though he had no knowledge of the dangers of lead-based paint, especially to young children and pregnant women.  At the time of his first birthday, G.M.M was diagnosed with an elevated blood lead level and though the plaintiffs' apartment was subsequently tested and found to contain twenty-three (23) violations for the presence of lead-based paint with lead dust found on almost every floor, the defendant had never previously had the apartment tested for lead-based paint.  The defendant is liable for violating various Local Laws of the City of New York, violation of 42 U.S.C. Section 4852d, for Gross Negligence and violation of the Landlord's warranty of habitability contained in the Lease Agreement.

## BACKGROUND

By May 6, 2011, the defendant, Mark Kimpson ("defendant") had been a landlord in Brooklyn, New York for about twenty-two (22) years, since 1989.  As an experienced landlord[1] (MK Tr. 19) the defendant owned a building located at 490 Macdonough Street, Brooklyn, NY 11233.  (MK Tr. 6).  Built in 1899, the building located at 490 Macdonough Street, was a multiple dwelling containing three (3) apartments; at his deposition, the defendant agreed that 490 Macdonough Street was a multiple dwelling with 3 apartments.  (MK Tr. 9).

On May 6, 2011, plaintiff Niki Hernandez-Adams and Joshua Mendez were a married couple in their thirties; Niki held a Master's Degree in Fine Arts and worked as a freelance costume designer; Joshua held a Bachelor's Degree and a graduate certificate in Music, and worked as a restaurant manager.[2]  (NHA Tr. 10-11, and JM Tr. 7-9).

On May 6, 2011, the defendant, plaintiff Niki Hernandez-Adams and Joshua Mendez all met at 490 Macdonough Street to sign a lease agreement for a term of 1 year for the Ground Floor apartment at 490 Macdonough Street, Brooklyn, NY 11233.  The

---

[1] MK Tr. refers to the deposition transcript of defendant, Mark Kimpson, taken on July 23, 2014.
[2] NHA Tr. refers to the deposition transcript of plaintiff, Niki Hernandez-Adams, and JM Tr. refers to the deposition transcript of Joshua Mendez, taken on June 25, 2014.

couple were shown the apartment and were introduced to defendant Kimpson by Natalie Cosby, an employee of Douglas Elliman Real Estate.  On that date, the plaintiff Niki Hernandez-Adams was visibly six months pregnant with the couple's first child, G.M.M., who was born on August 1, 2011.  At that meeting, the plaintiff and her husband discussed her pregnancy with the defendant. (JM Tr. 15; NHA Tr. 8; and NHA2 Tr. 14)[3]

At their meeting on May 6, 2011, the defendant, plaintiff Niki Hernandez-Adams and Joshua Mendez were given an important 1 page form ("Form") to read, entitled "Disclosure of Information on Lead-Based Paint and/or Lead-Based Hazards" (A copy of the form is annexed as Plaintiff's Exhibit 1, dated 7/23/14).  Plaintiff, Niki Hernandez-Adams, read the Form.  (NHA2 Tr. 20-22).  The defendant stated that the real estate broker had provided  the  Form at the meeting.  (MK Tr. 58-59).  Near the top of the Form is a "Lead Warning Statement," which reads as follows:

> "Housing built before 1978 may contain lead-based paint.  Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling.  Lessees must also receive a federally approved pamphlet on lead poisoning prevention."

Importantly, on that Form, the defendant initialed the following statement: "Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing."  At his deposition, the defendant acknowledged that although he initialed that provision, *he did not read the Form* (emphasis added), (MK Tr. 67-68).  Although the defendant had the opportunity to read the initialed document which contained important information about the dangers of lead-based paint in housing, especially to young children and pregnant women, he chose not to read it.  The defendant also failed to initial subdivision (b) (ii), which reads:  "Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing."

Regardless of whether, as the landlord, the defendant read the document, with its clear meaning, before he initialed it, he was required by law to be aware of its provisions. The purpose of the Form was to alert the parties to the dangers of lead-based paint.  The

---

[3] NHA2 Tr. refers to the deposition transcript of Niki Hernandez-Adams, and JM2 Tr, refers to the deposition transcript of Joshua Mendez, both taken on October 1, 2014.

defendant, however, by claiming to have no knowledge of lead-based paint and/or lead-based paint hazards in the housing, in effect, gave Niki Hernandez-Adams and Joshua Mendez the confidence to not be concerned that any such hazards existed in the apartment the couple was renting, since an experienced landlord, which he surely was, should certainly have been aware of such hazards, if, in fact, they existed.

On that Form, under the "Lessee's Acknowledgment," plaintiff Niki Hernandez-Adams did not initial section (c) which reads: "Lessee has received copies of all information listed above," and Plaintiff also left blank section (d) that "Lessee has received the pamphlet Protect Your Family from Lead in Your Home." At their depositions, the plaintiff and her husband confirmed that they never received any pamphlet, at any time. (See NHA2 Tr. 22, 26, and JM2 Tr. 20-22).

On the Form, under the "Agent's Acknowledgment," the agent, Natalie Cosby, initialed next to "Agent has informed the lessor of the lessor's obligations under U.S.C. 4852d and is aware of his/her responsibility to ensure compliance."

The Form was signed by plaintiff Niki Hernandez-Adams and by agent Natalie Cosby after a "Certification of Accuracy, which reads: "The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate." Though there was space for his signature, the defendant failed to sign.

During his deposition, the defendant insisted that there could not have been lead-based paint or lead dust at the time the plaintiff and her husband moved into the basement apartment at 490 Macdonough Street, since that apartment had been completely renovated, as follows:

    a. Each of the 3 apartments received new five-eighths sheetrock, everywhere. Then, the sheetrock was painted with 1 coat of primer, 2 coats of paint and new wood floors were installed. (MK Tr. 10, 13).

    b. There was nothing under the new sheetrock, because it was removed during demolition. (MK Tr. 14).

    c. The ceiling was also removed; only the beams remained. The kitchen and bathroom were completely renovated too. (MK Tr. 14, 15, 73).

During his deposition testimony, the defendant also made several statements, which, in substance, are admissions of his liability, as follows:

a. Prior to the renovation at 490 Macdonough Street, the defendant never had the building tested for the presence of lead. (MK Tr. 59). Therefore, on May 6, 2011, when he initialed the Form claiming that he had no knowledge of lead-based paint and/or lead-based paint hazards in the housing, he did not really know whether there was lead paint there since he had never checked by having the building tested for the presence of lead-based paint.

b. The defendant stated he did not know whether the contractor he hired for the renovations at 490 Macdonough Street was a licensed contractor. (MK Tr. 11).

c. The defendant only knew the contractor by his first name, Randy. (MK Tr. 12).

d. The defendant never used Randy before 490 Macdonough Street. (MK Tr. 12).

e. The defendant paid Randy with cash and neither requested nor received paid bills or invoices. (MK Tr. 12).

f. When the defendant purchased each of his properties, he did not have an engineer or inspector investigate the properties for any potentially toxic or dangerous substance. (MK Tr. 78).

Before the end of May 2011, plaintiff Niki Hernandez-Adams and Joshua Mendez moved into the Ground Floor apartment at 490 Macdonough Street. (NHA Tr. 8). On August 1, 2011, the plaintiff gave birth to plaintiff G.M.M., a home birth, in their Ground Floor apartment at 490 Macdonough Street. (NHA Tr. 14; and MK Tr. 84).

The defendant testified that he saw the infant plaintiff, G.M.M., on the day he was born and, subsequently, observed the plaintiff, G.M.M., crawling on the floor of the Ground Floor apartment at 490 Macdonough Street. (MK Tr. 84, 83, 92).

On or about August 1, 2012, the plaintiff took G.M.M. for his first year medical check-up and the physician discovered that he had an elevated blood-lead level of 9 ug/dL. The pediatrician recommended that they have their apartment tested for lead paint (NHA Tr. 43), and on August 27, 2012, the plaintiffs' Ground Floor apartment at 490 Macdonough Street was tested for lead paint by the Lead Poisoning Prevention Program

of the New York City Department of Health and Mental Hygiene with the following results:

    a.   Twenty-three (23) lead-based paint violations were found.  (See, Plaintiff's Exhibit 3, dated 7/23/14, annexed hereto.)

    b.   Lead-based paint also was found on the walls, doors, ceiling, closets, windows and cabinets in the vestibule, hallway, foyer, living room, kitchen and bedroom.  (See, Plaintiff's Exhibit 3, dated July 23, 2014, annexed hereto).

On September 5, 2012, the plaintiffs' Ground Floor apartment floors at 490 Macdonough Street was tested for lead dust with the following results:

    a.   A total of 14 wipes were taken; seven (7) of the wipes were found to be above the permissible level established by the NYC Lead Poisoning Prevention Program.  (See, Plaintiff's Exhibit 6, dated 7/23/14, annexed hereto).

    b.   Lead-contaminated dust, a lead-based paint hazard, was found on the floors of the foyer, living room, hallway and bedroom.  (See, Plaintiff's Exhibit 7, dated 7/23/14, annexed hereto).

## STANDARD OF REVIEW

A district court should grant summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.56(c); see also *Hermes Int'l* v. *Lederer de Paris Fifth Ave., Inc.,* 219 F.3d 104, 107 (2d Cir. 2000).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986).  Genuine issues of material fact cannot be created by mere conclusory allegations; rather, summary judgment is appropriate only when, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party."  *Heublein, Inc.* v. *United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing *Matsushita Elec. Industr. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

In assessing when summary judgment should be granted, "[t]here must be more than a 'scintilla of evidence' in the non-movant's favor; there must be evidence upon which a factfinder could reasonably find for the non-movant."  *Heublein*, 996 F.2d at

1461 (citing *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). While a court must always "resolv[e] ambiguities and draw[ ] reasonable inferences against the moving party," *Knight* v. *U.S. Fire Insurance Company*, 804 F.2d 9, 11 (2d Cir. 1986) (citing *Anderson*, 477 U.S. at 248), the non-movant may not rely upon "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight*, 804 F.2d at 12. Further, "Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." See, *In re September 11 Property Damage and Business Loss Litig.*, 468 F. Supp. 2d 508, 515 (S.D.N.Y. 2006) (internal citations omitted). Thus, to defeat a motion for summary judgment, non-moving parties "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and they "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd*. v. *Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted); see also *Trans Sport, Inc*. v. *Starter Sportswear, Inc.*, 964 F.2d 186. 188 (2d Cir. 1992) (noting that summary judgment cannot be defeated "on the basis of conjecture or surmise") (internal quotation marks and citation omitted).

## ARGUMENT

I. Defendant Kimpson violated Local Laws and various Sections of the Administrative Code of the City of New York.

    A. The defendant, MARK KIMPSON, violated Local Laws of The City of New York, the New York City Childhood Lead Poisoning Prevention Act of 2003 and Section 27-2056.3 of Article 14 of the Administrative Code of the City of New York, as follows:

    Section 27-2056.3 Owners' Responsibility to Remediate. "The existence of a lead-based paint hazard in any multiple dwelling where a child of applicable age resides is hereby declared to constitute a condition dangerous to life and health. An owner shall take action to prevent the reasonably foreseeable occurrence of such a condition and shall expeditiously remediate such condition and any underlying defect, when such underlying defect exists…"

**A Multiple Dwelling:  490 Macdonough Street, Brooklyn, NY 11233.**

The plaintiffs' Ground Floor apartment at 490 Macdonough Street, Brooklyn, NY 11233, was located in a multiple dwelling.  In New York, a "multiple dwelling is defined as a dwelling which is either rented, leased, let or hired out, to be occupied, or is occupied as the residence or home of three or more families living independently of each other." (N.Y. MDW. LAW Section 4: Definitions).  At his deposition, the defendant agreed that his building at 490 Macdonough Street contained three separate apartments. (MK Tr. 9; NHA Tr. 66; and JM Tr. 60-61).  In addition, the defendant testified that while the Mendez family was residing in the Ground Floor apartment at 490 Macdonough Street, another tenant named Washam and her roommate Marie DeVallace lived in the apartment above the Mendez family and Ilene Richman lived above Washam and DeVallace  (MK Tr. 77).  Therefore, there is no question that at 490 Macdonough Street there were three families living independently of each other in that multiple dwelling.

**A Child Under Six Years of Age Resided in the Ground Floor Apartment.**

B.   Section 27-2056.18 of Article 14 of the Administrative Code of the City of New York applies to the instant lawsuit, since it is based on the age of the child, as follows:  "For purposes of this article, the term "applicable age" shall mean under…six years of age…"  (See Section 27-2056.18).  Whenever the term 'applicable age' appears in Article 14 of the Administrative Code of the City of New York, it means a child under six years of age, which certainly applied to G.M.M.

G.M.M. was born on August 1, 2011, and from that date until August 4, 2012, when he was diagnosed with an elevated blood-lead level, G.M.M. was indeed of "applicable age," and had resided in said Ground Floor apartment with his parents, plaintiff Niki Hernandez-Adams and Joshua Mendez from the day of his birth.  The defendant also acknowledged that he saw the plaintiff, G.M.M., on the day he was born and, thereafter, he observed the plaintiff, G.M.M., crawling on the floor of the Ground Floor apartment at 490 Macdonough Street.  (MK Tr. 84, 83, 92).

**A Hazardous Lead Paint Condition.**

7

On August 27, 2012, an inspection of the Ground Floor apartment at 490 Macdonough Street by personnel of the Lead Poisoning Prevention Program of the New York City Department of Health and Mental Hygiene "… determined that the above dwelling unit contains lead based paint with a concentration of lead equal to or greater than 1.0 milligrams of lead per square centimeter, and which is peeling, and/or located on one or more friction surfaces, or on another surface that the Department has determined to be a lead hazard, because of its condition, location, or accessibility to children, in violation of the New York City Health Code Section 173.13 (d)(1);" finding twenty-three (23) violations for lead-based paint on the walls, doors, closets, cabinets and windows located in the vestibule, foyer, living room, bedroom, hallway and hallway ceiling. (See, Plaintiff's Exhibits 4 and 3, annexed hereto).

In addition, on September 5, 2012, another inspection of said apartment with testing for the presence of lead dust on floors, a lead dust wipe test, also revealed lead-contaminated dust at levels that established a lead-based paint hazard on the floors of the foyer, living room, hallway, and bedroom of said apartment. (See, Plaintiff's Exhibit 7, dated 7/23/14, annexed hereto). Therefore, both inspections and testing on August 27, 2012 and September 5, 2012 established that the Ground Floor apartment at 490 Macdonough Street contained lead-based paint on many of its surfaces and lead dust on most of its floors, at such high levels as to be in violation of the law. The defendant conceded that inspections had found lead literally throughout the apartment. (MK Tr. 75).

**Section 27-2056.3 Liability of Landlord.**

Pursuant to Local Law No. 1 (2004) of the City of New York and Section 27-2056.3 of Article 14 of the Administrative Code of the City of New York, the owner of a multiple dwelling "…must remove or cover paint containing specified hazardous levels of lead in any apartment in which a child six years of age or younger resides." *Duarte v. Community Health Corp.*, 42 A.D.3d 480, 839 N.Y.S.2d 231 (2d Dept. 2007), citing *Juarez v. Wavecrest Mgt. Team*, 88 NY2d 628 [1996].

Moreover, a violation of Local Law No. 1 does not result in absolute liability, *Duarte,* above at 481, citing *Juarez,* at 646. In order for a landlord to be liable for a lead

paint condition, the plaintiff must establish that the landlord had actual or constructive notice of that condition for a period of time that, "in the exercise of reasonable care, it should have been remedied," *Duarte*., above at 481, citing *Juarez*, at 646. However, in New York City multiple dwellings, constructive notice of a hazardous lead condition "is presumed when the landlord has notice that a child under the age of six resides in the unit," Duarte, at 481, citing Juarez, at 647.

Therefore, since the defendant knew that G.M.M., a child under the age of six, resided in the plaintiffs' Ground Floor apartment at 490 Macdonough Street, the defendant had constructive notice of a hazardous lead condition in that apartment, which was not remedied for at least one full year; from G.M.M.'s birth, on August 1, 2011, until August 4, 2012, when G.M.M. was found to have an elevated blood-lead level by his pediatrician. Therefore, the defendant, by not removing or covering the lead-based paint in the plaintiffs' Ground Floor apartment within a reasonable time after having constructive notice on August 1, 2011, thereby violated Section 27-2056.3.

C. The defendant, MARK KIMPSON, violated Local Laws of The City of New York, the New York City Childhood Lead Poisoning Prevention Act of 2003 and Section 27-2056.4 of Article 14 of the Administrative Code of the City of New York, as follows:

Section 27-2056.4 Owners' Responsibility to Notify Occupants and Investigate.

"a. In any dwelling unit in a multiple dwelling erected prior to January 1, 1960 where a child of applicable age resides, and in any dwelling unit in a multiple dwelling erected on or after January 1, 1960 and before January 1, 1978 where a child of applicable age resides and the owner has actual knowledge of the presence of lead-based paint, and in common areas of such multiple dwellings, the owner shall cause an investigation to be made for peeling paint, chewable surfaces, deteriorated sub-surfaces, friction surfaces and impact surfaces. Such investigation shall be undertaken at least once a year and more often if necessary, such as when, in the exercise of reasonable care, an owner knows or should have known of a condition that is reasonably foreseeable to cause a lead-based paint hazard, or an occupant makes a complaint concerning a condition that is likely to cause a lead-based paint hazard…"

"b. No occupant in a dwelling unit in such multiple dwelling shall refuse to or unreasonably fail to provide accurate and truthful information regarding the residency of a child of applicable age therein, nor shall an occupant refuse access to the owner at a reasonable time and upon reasonable prior notice to any part of the

dwelling unit for the purpose of investigation and repair of lead-based paint hazards."

"c.  All leases offered to tenants or prospective tenants in such multiple dwellings must contain a notice, conspicuously set forth therein, which advises tenants of the obligations of the owner and tenant as set forth in this section.  Such notice must be in a manner approved by the department, the content of which shall, at a minimum, be in English and *Spanish* (emphasis added).  The owner of such multiple dwelling shall provide the occupant of such multiple dwelling with the *pamphlet* (emphasis added) described in subdivision b of section 17-179 of this code…"

**The Defendant Owner Failed to Investigate for Lead Paint Conditions at 490 Macdonough Street.**

There is no dispute that the only conclusion to reach is that 490 Macdonough Street is a multiple dwelling and a child of applicable age resided therein during the relevant period.

The defendant testified that before the renovation was performed at 490 Macdonough Street, before the plaintiff and Joshua Mendez signed their lease on May 6, 2011, he never had tests performed to determine whether there was lead paint anywhere within those premises.  (MK Tr. 59, 74).  The first time he ever heard of a lead paint disclosure form was when the plaintiff and Joshua Mendez signed their lease on May 6, 2011, and the broker had that Form.  (MK Tr. 58, 59).   On May 6, 2011, when he initialed that Form, titled the Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards (See, Plaintiff's Exhibit 1) he represented that he has no knowledge of lead-based paint and/or lead-based paint hazards in the apartment, although he had not, previously, made any effort to determine if there was lead paint at 490 Macdonough Street.  (MK Tr. 60).  The defendant agreed that all the buildings he owned, including 490 Macdonough Street, were old; fifty or sixty years old.  (MK Tr. 32). However, the Zillow and Trulia websites (via Google.com) report that 490 Macdonough Street was built in 1899.  Certainly, 490 Macdonough Street was built prior to January 1, 1960, and, therefore, Section 27-2056.4 applies.  In dwelling units in a multiple dwelling where a child of applicable age resides, as  well  as  in common  areas, actual knowledge of lead-based paint by the landlord is not required to obligate an owner "to investigate for peeling paint, chewable surfaces, deteriorated sub-surfaces, friction surfaces and impact

surfaces.  Such investigation shall be undertaken *at least once a year* (emphasis added) and more often if necessary, such as when, in the exercise of reasonable care, an owner knows or *should have known* (emphasis added) of a condition that is reasonably foreseeable to cause a lead-based paint hazard…" (<u>See</u>, Section 27-2056.4).

**There Were No Investigations for Lead Paint Either Prior to or While the Plaintiffs' Resided at 490 Macdonough Street.**

The plaintiffs resided at 490 Macdonough Street from May 2011 until on or about the first week of August 2012; for more than fourteen (14) months.  During that time, plaintiff Niki Hernandez-Adams and Joshua Mendez were not aware of any issue of lead paint or the need to inspect for lead paint in their apartment or anywhere in the building. The defendant testified that before the Mendez family moved into their Ground Floor apartment, he knew that building was in bad condition and not habitable and he needed to completely renovate all apartments in that building by demolition and removal of every wall and ceiling, and the installation of new five eighth (5/8 inch) sheetrock for new walls and ceilings, new wood floors, new kitchen and bathroom, new cabinets, new sinks, marble floors, presumably in the bathrooms, and 1 coat of primer and 2 coats of paint. (MK Tr. 10, 13, 15).

Apparently, some work was still being performed, at least in the Ground Floor apartment, since plaintiff Niki Hernandez-Adams testified that the work was not finished by May 6, 2011, when she signed the lease. (NHA2 Tr. 19).  The only conclusion to reach is that if all of that demolition and renovation actually had been performed, the inspections for lead-based paint and lead dust on August 27, 2012 and September 5, 2012, respectively, would not have found twenty-three (23) lead-based paint violations for the presence of lead-based paint on many walls of most of the rooms, on a ceiling, the presence of lead dust above threshold limits on the floors of the foyer, living room, hallway and bedroom, and lead dust below threshold limits present on the kitchen floor.

**The Defendant Also Violated Section 27-2056.4, c.**

D.   The defendant, MARK KIMPSON, violated several Local Laws of The City of New York, the New York City Childhood Lead Poisoning Prevention Act of 2003 and Section 27-2056.4, c, of Article 14 of the Administrative Code of the City of New York, as follows:

Section 27-2056.4, c.  Requires:

"All leases offered to tenants or prospective tenants in such multiple dwellings must contain a notice, conspicuously set forth therein, which advises tenants of the obligations of the owner and tenant as set forth in this section.  Such notice must be in a manner approved by the department, the content of which shall, at a minimum, be in English and *Spanish* (emphasis added).  The owner of such multiple dwelling shall provide the occupant of such multiple dwelling with the *pamphlet* (emphasis added) described in subdivision b of section 17-179 of this code…"

The plaintiffs' Lease Agreement, however, had no such notice advising tenants of the obligations of the owner and tenant, as set forth in Section 27-2056.4.  In addition, the Lease Agreement is entirely in English.  (See, Plaintiffs' Exhibit 2, plaintiffs' Lease Agreement).  Therefore, the defendant's failure to provide said notice in English and Spanish was a violation of Section 27-2056.4, c.

Section 27-2056.4, c., requires the landlord to provide the lessees with a pamphlet.  The plaintiff Niki Hernandez-Adams and Joshua Mendez each testified that they never received any pamphlet from the defendant or from anyone else.  (NHA2 Tr. 26; JM2 Tr. 20-22).  Neither does the defendant dispute this.  He testified that the first time he had a pamphlet was when he gave one to the next tenant of the Ground Floor apartment at 490 Macdonough Street, subsequent to the Mendez family moving out. (MK Tr. 90).  It is undisputed that the defendant's failure to provide said pamphlet was a violation of Section 27-2056.4, c.

E.   The defendant, MARK KIMPSON, also violated Local Laws of The City of New York, the New York City Childhood Lead Poisoning Prevention Act of 2003 and Section 27-2056.5 of Article 14 of the Administrative Code of the City of New York, as follows:

Section 27-2056.5 Presumption.

a. "In any multiple dwelling erected prior to January 1, 1960, it shall be presumed that the paint or other similar surface-coating material in any dwelling unit where a child of applicable age resides or in the common areas is lead-based paint…"

**The Defendant Violated Section 27-2056.5.**

That 490 Macdonough Street is a multiple dwelling, built before January 1, 1960, and a child of applicable age (under age 6) resided there have been conceded by the defendant. For the purposes of culpability, it is irrelevant whether the defendant was ignorant of Section 27-2056.5, or he had knowledge, but chose to ignore its presumption regarding lead-based paint, since he made no effort to remove or cover the lead-based paint for more than one year, from August 1, 2011 to August 4, 2012, after having actual notice of G.M.M., a child of applicable age, residing in the plaintiffs' Ground Floor apartment since at least August 1, 2011. Simply, the defendant failed to comply and, thereby, violated the presumption of Section 27-2056.5.

F. The defendant, MARK KIMPSON, violated Local Laws of The City of New York, the New York City Childhood Lead Poisoning Prevention Act of 2003 and Section 27-2056.6 of Article 14 of the Administrative Code of the City of New York, as follows:

Section 27-2056.6 Violation in a dwelling unit. "The existence of lead-based paint in any dwelling unit in a multiple dwelling where a child of applicable age resides shall constitute a class C immediately hazardous violation if such paint is peeling or is on a deteriorated subsurface." [A "deteriorated subsurface shall mean an unstable or unsound painted subsurface, an indication of which can be observed through a visual inspection, including, but not limited to, rotted or decayed wood, or wood or plaster that has been subject to moisture or *disturbance* (emphasis added)." (See Section 27-2056.2 Definitions)]. Pursuant to the disturbance of surfaces during the extensive renovation of the Ground Floor apartment at 490 Macdonough Street, as reported by the defendant, all surfaces, such as walls, ceilings, floors, kitchen and bathroom were certainly disturbed and/or removed during such extensive demolition.

The following inspection reports and letters to defendant from Deborah Nagin, Director, New York City Department of Health and Mental Hygiene further establish that Section 27-2056.6 was violated:

On August 27, 2012, an inspection report of said apartment by the New York City Department of Health and Mental Hygiene found twenty-three (23) violations on the walls, doors, a ceiling, closets, cabinets and windows located in the vestibule, hallway, foyer, living room and bedroom.  (See, Plaintiff's Exhibits 3).

On September 5, 2012, a second inspection report, containing the results of tests for the presence of lead dust on floors, a lead dust wipe test, also revealed lead-contaminated dust at levels that established a lead-based paint hazard on the floors of the foyer, living room, hallway, and bedroom of said apartment. (See, Plaintiff's Exhibit 7).

A letter to defendant, dated September 4, 2012, from Deborah Nagin, reads:  The "inspection conducted by the Department of the dwelling unit on the above date determined that the above dwelling unit contains lead based paint with a concentration of lead equal to or greater than 1.0 milligrams of lead per square centimeter, and which is peeling, and/or located on one or more friction surfaces, or on another surface that the Department has determined to be a lead hazard, because of its condition, location, or accessibility to children, in violation of the New York City Health Code Section 173.13 (d)(1)…" (See, Plaintiff's Exhibit 4).

In addition, a letter to defendant, dated September 25, 2012, from Deborah Nagin, indicates that "…pursuant to New York City Health Code Section 173.14 (C) (1) (A) you have not filed with the LPPP notification of starting lead abatement…"  (See, Plaintiff's Exhibit 5).

Not surprisingly, another a letter to defendant, dated November 09, 2012, from Deborah Nagin, indicates the defendant "…either failed to comply with the above order issued pursuant to New York City Health Code Section 173.13, 173.14 or 3.09 or have not retained a third party inspector to conduct a visual inspection and surface dust testing at the completion of work that has *disturbed* (emphasis added) lead based paint…" (See, Plaintiff's Exhibit 8).

G. The defendant, MARK KIMPSON, violated Local Laws of The City of New York, the New York City Childhood Lead Poisoning Prevention Act of 2003 and Section 27-2056.8 of Article 14 of the Administrative Code of the City of New York, as follows:

14

Section 27-2056.8 Violation in a dwelling unit upon turnover. a. "Upon turnover of any dwelling unit in a multiple dwelling erected prior to January 1, 1960...the owner shall within such dwelling unit have the responsibility to:

(1) remediate all lead-based paint hazards and any underlying defects, when such underlying defects exist;

(3) provide for the removal or permanent covering of all lead-based paint on all friction surfaces on all doors and door frames; and

(4) provide for the removal or permanent covering of all lead-based paint on all friction surfaces on all windows, or provide for the installation of replacement window channels or slides on all lead-based painted friction surfaces on all windows…"

The defendant violated Section 27-2056.8, since turnover occurred for plaintiff Niki Hernandez-Adams in May 2011, but the defendant failed to remediate any lead-based paint hazards, etc., until after plaintiff G.M.M. was diagnosed with lead poisoning on August 4, 2012, and plaintiff Niki Hernandez-Adams and G.M.M. vacated the apartment almost immediately.

II.   Defendant, MARK KIMPSON, violated 42 U.S.C. Section 4852d for failure to provide a lead hazard information pamphlet upon transfer of residential property.

"(a) Lead disclosure in purchase and sale or *lease* (emphasis added) of target housing.

(1) Lead-based paint hazards.

Since October 28, 1995, the regulations shall require that, before the purchaser or lessee is obligated under any contract to purchase or lease the housing, the seller or lessor shall-

(A) provide the purchaser or lessee with a lead hazard information *pamphlet* (emphasis added) as prescribed by the Administrator of the Environmental Protection Agency under section 406 of the Toxic Substances Control Act [15 U.S.C. 2686];

(4) Compliance assurance.

15

"Whenever a seller or lessor has entered into a contract with an agent for the purpose of selling or leasing a unit of target housing, the regulations promulgated under this section shall require the agent, on behalf of the seller or lessor, to ensure compliance with the requirements of this section."

(b)  Penalties for violations.

(1)  Monetary penalty;

(3)  Civil liability; and

(4)  Costs.

The testimony of each party established, without question, that neither the plaintiff, Niki Hernandez-Adams, nor her husband, Joshua Mendez, received any pamphlet, and certainly not a lead hazard information pamphlet, from anyone, including the defendant and the agent.  (See, NHA2 Tr. 26; JM2 Tr. 20-22; and MK Tr. 90).  Since 42 U.S.C. Section 4852d, (a) (1) (A) requires the lessor, defendant Mark Kimpson, to provide said pamphlet and he admitted that he did not do so.  Therefore, the defendant is liable for violating this statute, as well.

III.  The Defendant was Grossly Negligent for the Knowingly Careless and Incomplete Renovation at 490 Macdonough Street.

Although some renovations were performed by defendant in the plaintiffs' Ground Floor apartment at 490 Macdonough Street, the results of the tests performed for lead paint and lead paint hazards one year later confirm, without question, the defendant's testimony was untruthful.  Had all the old walls been removed and replaced with new sheetrock walls, which were then primed and painted with unleaded paint, there is no logical explanation for why the walls contained lead-based paint when they were tested fourteen or fifteen months subsequent to that renovation.  Neither is there an explanation for the presence of lead paint dust throughout the apartment.  Surprisingly, the defendant made numerous, significant admissions; establishing his unprofessional, careless and grossly negligent conduct during the renovation, as follows:

16

a. Prior to the renovation at 490 Macdonough Street, the defendant never had the building tested for the presence of lead.   (See, MK Tr. 59). Therefore, on May 6, 2011, when he initialed the Form claiming that he had no knowledge of lead-based paint and/or lead-based paint hazards in the housing, he did not know and did not care whether there was lead paint.

b. The defendant stated he did not know whether the contractor he hired for the renovations at 490 Macdonough Street was a licensed contractor. (MK Tr. 11).

c. The defendant only knew the contractor by his first name, which was Randy.  (MK Tr. 12).

d. The defendant never used Randy before 490 Macdonough Street.  (MK Tr. 12).

e. The defendant paid Randy with cash and did not receive paid bills or invoices.  (MK Tr. 12).

f. Although Randy did the plumbing and electrical work, the defendant did not know whether he was licensed to perform that work.  (MK Tr. 16).

g. The defendant had no address for Randy.  (MK Tr. 16).

h. The defendant stated that at his other buildings, his tenants had no leases and paid him with cash.  (MK Tr. 63).

i. When the defendant purchased each of his properties, he did not have an engineer or inspector investigate any of those properties.  (MK Tr. 78).

There is no choice but to conclude from the negligent conduct and/or omissions by this landlord, who has more than twenty years of experience, as such, that he was guilty of gross negligence during the demolition and renovation.  Hence, the defendant, unquestionably, had no concern for the health and safety of his tenants, in this case, infant G.M.M. and his parents.

IV.  Defendant Violated the Landlord's Warranty of Habitability

The duly executed Lease Agreement, dated May 6, 2011, between the defendant Mark Kimpson and plaintiff Niki Hernandez-Adams and Joshua Mendez, contains, at paragraph 32, a "Landlord's warranty of habitability, " which reads:  "Landlord states that the Apartment and Building are fit for human living and there is no condition dangerous to health, life or safety."   However, the Ground Floor apartment at 490 Macdonough Street did indeed contain substantial amounts of lead-based paint and lead dust that was dangerous to health, life or safety.   Through his aforementioned incompetence, carelessness and gross negligence, the defendant rented a toxic apartment to plaintiff Niki Hernandez-Adams and Joshua Mendez and exposed them and their child, G.M.M., to dangerous, lead-based paint and lead dust with potential serious medical consequences for the couple and, more significantly, for their newborn son.  (See Plaintiffs' Exhibit 2, plaintiffs' Lease Agreement).

## CONCLUSION

For the reasons stated, the Plaintiffs respectfully request that the Court enter summary judgment to establish the liability of the Defendant, precluding the Defendant from asserting any future defense to liability and permitting the Plaintiffs to assert damages relating to the Plaintiffs' injuries at a Trial by Jury.

Dated:  New York, New York
      December 1, 2014

      Stephen M. Cantor (SC 8690)
      STEPHEN M. CANTOR, P.C.,
      ATTORNEY AT LAW
      325 Broadway, Suite 502

18

New York, New York 10007-1187
(212) 732-845
*Attorneys for Plaintiffs*