UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
G.M.M., a minor child by his mother and natural
guardian, NIKI HERNANDEZ-ADAMS,
and NIKI HERNANDEZ-ADAMS, individually,

                              Defendants,     No. 1:13-CV-05059

    v.

MARK KIMPSON,

                              Defendant.
-----------------------------------------------------------------X

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

                              Roger V. Archibald, Esq.
                              ROGER V. ARCHIBALD, PLLC
                              Attorney for Defendant
                              26 Court Street, Suite 711
                              Brooklyn, New York 11242
                              (718) 237-1111

Dated: February 16, 2015

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ 3

PRELIMINARY STATEMENT ................................................................................................ 4

RE-STATEMENT OF FACTS ................................................................................................... 4

STANDARD OF REVIEW ......................................................................................................... 5

ARGUMENT ................................................................................................................................ 7

    MATERIAL QUESTIONS OF FACT EXISTS WHICH DICTATE DENIAL OF
    PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

    POINT I

    THERE ARE ISSUES OF FACT WITH RESPECT TO WHETHER THE
    RENOVATION OF THE SUBJECT GROUND LEVEL APARTMENT WAS
    PROPERLY PERFORMED SUCH THAT ANY PREVIOUSLY EXISTING LEAD-
    PAINT CONDITION HAD BEEN FULLY ENCAPSULATED ......................................... 7

    POINT II

    THERE ARE ISSUES OF FACT WITH RESPECT TO WHETHER THE LEAD
    TESTING PERFORMED WAS ACCURATE ...................................................................... 9

    POINT III

    THERE ARE ISSUES OF FACT WITH RESPECT TO WHETHER THE
    PLAINTIFFS' DOGS DISTURBED THE PREVIOUSLY ENCAPSULATED LEAD,
    THEREBY CREATING A HAZARDOUS CONDITION ................................................. 10

    CONCLUSION ..................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .. 5

Auletta v. Tully, 576 F. Supp. 191, 194 (N.D.N.Y. 1983), aff'd, 732 F.2d 142 (2d Cir. 1984) ..... 6

Celotex Corp. v. Catrett 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ........... 5

Egelston v. State Univ. Coll. at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976) ................................. 6

Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997) ........................................................................ 6

Gibralter v. City of New York, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985) .................................. 6

Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996) ........................................................ 5

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)......................................................................................................................5

McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006 ................................................................... 6

Quaratino v. Tiffany & Co., 71 F.3d 58, 65 (2d Cir. 1995).............................................................6

Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 436 (2d Cir. 1999) ................. 5

Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990) ................................................................ 6

**Statutes**

Fed. R. Civ. P. 56(c) ....................................................................................................................... 5

## PRELIMINARY STATEMENT

Plaintiffs submitted their Memorandum of Law in support of the Motion for Summary Judgment on or about December 1, 2014 ("Plaintiffs' Memo of Law").

Defendant, Mark Kimpson ("Defendant' or "Mr. Kimpson"), now submits this Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment ("Defendant's Memo of Law"). Also accompanying Defendant's Memo of Law are the affidavits of Defendant, dated February 16, 2015; that of structural engineer expert, Alex Moussavi, P.E., dated February 16, 2015 and that of lead testing expert, Arthur A. Morales, dated February 16, 2015.

There are numerous issues of material fact precluding a Rule 56 motion for summary judgment. Specifically, there are issues of fact with respect to: 1) whether the renovation performed in the subject apartment sufficiency encapsulated any lead-based condition, 2) whether the testing results performed by the city agency were accurate, and 3) whether the previously encapsulated lead-pain had been disturbed by Plaintiffs' dogs which repeatedly scratched the doors, walls and moldings, thereby creating the hazardous lead conditions now at issue.

As the foregoing are more fully detailed below, Defendant thus respectfully request that the Court deny Plaintiffs' motion for summary judgment in its entirety.

## RE-STATEMENT OF FACTS

Defendant adopts the Statement of Facts set forth in Plaintiff's Memo of Law, except refers the Court to the factual averments set forth in the accompanying affidavits.

4

## STANDARD OF REVIEW

Under the standards set forth below, where the Court finds a genuine issue of material fact, Plaintiffs' motion must be denied.

Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).

In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party, Defendant Mark Kimpson ("Defendant"). Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("Anderson"); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); see also Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 436 (2d Cir. 1999) ("[w]hen considering a motion for summary judgment the court must draw all factual inferences and resolve all ambiguities in favor of the nonmoving party").

To grant the motion, the court must determine that there is no genuine issue of material fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine factual issue derives from the "evidence [being] such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

"If, as to the issue on which summary judgment is sought, there is *any* evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996) (emphasis supplied).

"[C]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

Finally, it is well-settled that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. See Anderson, 477 U.S. at 256; Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990). And, since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, the Court should not grant summary judgment unless "it is quite clear what the truth is [and] that no genuine issue remains for trial." Auletta v. Tully, 576 F. Supp. 191, 194 (N.D.N.Y. 1983), aff'd, 732 F.2d 142 (2d Cir. 1984).; see also Egelston v. State Univ. Coll. at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976); Gibralter v. City of New York, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985) (stating that summary judgment "is a drastic remedy and should be applied sparingly").

In this circuit, the Second Circuit Court of Appeals has held that the "[t]rial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Quaratino v. Tiffany & Co., 71 F.3d 58, 65 (2d Cir. 1995)  Moreover, the Second Circuit Court further teaches that the failure of a District Court to heed these rules is reversible error. McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006)

This case is rife with genuine issues of material factual disputes.

# ARGUMENT

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED GIVEN THE EXISTENCE OF MATERIAL QUESTIONS OF FACT

Plaintiff conceded that "if all of that demolition and renovation actually had been performed, the inspections for lead-based paint and lead dust on August 27, 2012 and September 5, 2012, respectively, would not have found twenty-three (23) lead-based paint violations . . ." (See Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment, at p.11) (hereinafter, "Plaintiffs' Memo of Law")

It is to this essential issue that Defendant asserts all questions of fact are derived. Defendant joins in Plaintiffs' reasoning that if done correctly, the very nature of the renovations likely would have encapsulated any lead-paint condition. If so, then material questions of fact are raised necessarily as to the explanation for the purported high lead levels found in the apartment. These issues ought not and should not be decided on a motion for summary judgment.

## POINT I

### THERE ARE ISSUES OF FACT WITH RESPECT TO WHETHER THE RENOVATION OF THE SUBJECT GROUND LEVEL APARTMENT WAS PROPERLY PERFORMED SUCH THAT ANY PREVIOUSLY EXISTING LEAD-PAINT CONDITION HAD BEEN FULLY ENCAPSULATED

Plaintiffs' admit that had the renovations been done properly, there would not have been the presence of excessive levels of lead found in the apartment.

Notwithstanding Plaintiffs' significant reliance on applicable statutory constriction to imply liability upon Defendant, the facts demonstrate that in any event, the renovations to the

apartment were, in fact, fully performed and done in such a manner that any existing lead-paint was fully encapsulated and thereby rendered innocuous to any inhabitants.

Mr. Kimpson has testified that the renovation of the apartment essentially was a gut-renovation, as that term is commonly understood. The apartment was re-sheetrocked throughout and thereafter covered with two coats of non-lead-based paint. (See Defendant's deposition at ps. 10, 73 and Defendant's accompanying affidavit hereto at par. 3). Further, Mr. Kimpson had every reason to believe that post-renovation, the apartment had been throughly cleaned. (See Defendant's affidavit at par. 4) Plaintiffs have presented no evidence to contradict Mr. Simpson's assertions in this regard.

Plaintiff Ms. Hernandez-Adams and her husband, Joshua Mendez, likewise attest to the completeness of the renovations and the condition of the apartment, prior to their occupancy of same. At page 14 of her October 1, 2012 deposition, Ms. Hernandez-Adams stated:

> . . . We decided that we liked the apartment. The size of it was what we were looking for. And we were reassured that there was -- <u>it was new</u> -- you know, there was new work going on, that <u>it was going to be in good shape</u>. Natalie ad mentioned that she had a lot of confidence in him [Mr. Kimpson] as a landlord, and <u>she said he did good work</u>. So we decided it was going to be a good place for us to have our family. (emphasis supplied)

Likewise, Mr. Mendez stated at page 15 of his deposition: ". . .We were very happy and we loved his [Mr. Kimpson] apartment. We liked the layout. We liked the location. . . ." They themselves attest to their actual view and perception of the apartment. Their broker, Natalie, also verified that Mr. Kimpson "did good work" with his renovations.

The engineer who performed a recent assessment of the apartment, Alex Moussavi, P.E., concluded that:

> The ground level apartment was totally renovated in 2011. The walls and ceilings were entirely encapsulated with new drywall. The floor covering was hardwood floor. The method of encapsulation, the workmanship, the quality control, the

8

> safety and the overall renovation of the ground level apartment was found to be acceptable and met the engineering and construction industry design standards.
> (See Moussavi affidavit at par. 7)

Likewise, the certified lead-paint tester, Arthur A. Morales, who also performed a recent assessment of the apartment concluded that:

> Complete enclosure with drywall material is an acceptable abatement method. The lead-based paint at these drywall surfaces is not accessible in the living space.
> (See Morales affidavit at par. 21(B))

At such, there is a question of fact as to whether the renovations were done in such a manner that encapsulated any lead-paint.

## POINT II

**THERE ARE ISSUES OF FACT WITH RESPECT TO WHETHER THE LEAD TESTING PERFORMED WAS ACCURATE**

Plaintiffs rely heavily on the testing results performed by the Lead Poisoning Prevention Program of the New York City Department of Health and Mental Hygiene. (See Plaintiff's Memo of Law at p. 5 and Exhibit 3 and Exhibit 6 thereto)

First, as a practical matter, the testing results are not presented in admissible form since they appear to be uncertified or authenticated in any way. As such, they must be rejected by this Court.

Second, the reports fail to detail the scientific methodology under which the tests were performed or how the results therefore were calculated. Again, on this basis the test results must be rejected by this Court.

Third, assuming the initial September 23, 2014 testing was done using the commonly accepted XRF devise, lead testing expert Mr. Morales cautions that even some of the positive

9

tests he found: ". . . was the result of the XRF device "reading thru" the drywall (sheetrock) material to the painted surface that is covered." (See the Morales affidavit at par. 21 (A))

It thus is clear that the Court has no way of validating the test results so heavily relied upon Plaintiffs. And even if validated in some manner, the potentially false levels gleaned from a XRF device, still in any event, create a question of fact as to whether the results are in fact reliable. Summary judgment should not be granted on this basis.

## POINT III

**THERE ARE ISSUES OF FACT WITH RESPECT TO WHETHER THE PLAINTIFFS' DOGS DISTURBED THE PREVIOUSLY ENCAPSULATED LEAD, THEREBY CREATING A HAZARDOUS CONDITION**

It is uncontroverted that Plaintiff Ms. Hernandez-Adams owned two dogs as evidenced by her deposition testimony:

> Q: Was there a reason you focused on the bottom apartment?
>
> A: Yes. We needed a yard. We needed a garden. So that was primarily why we looked at that apartment.
>
> Q: Why was it your preference to have a garden?
>
> A: We have two dogs. So we needed a backyard for them. (See Ms. Hernandez-Adams' deposition transcript at p. 12)

Mr. Kimpson states in his affidavit that he was unaware the Plaintiff owned dogs when she moved into the apartment. He further observed that the dogs would run to the door and begin scratching frantically, as though they were trying to escape the apartment. He also observed when he inspected the apartment upon learning of the purported lead-paint issue, that in fact several of the walls and moldings within the apartment were severely scratched and damaged and the paint in those areas was also in very poor condition. He was forced to replace

the door to the apartment because it was damaged so heavily. (See Defendant's affidavit at pars. 10) It stands to reason the dogs then distributed the potentially disturbed paint and dust throughout the apartment

With the foregoing in mind, the opinion of lead-paint testing expert Mr. Morales becomes very illuminating:

> Lead-paint does not pose a health hazard unless the encapsulated paint is of poor condition or if the paint has been disturbed by friction, poor cleaning or scratching like that done by a dog. (See Morales affidavit at par. 22 (B))

When taken together, it is plausible the lead-paint levels in the apartment were caused exclusively by the perpetually repeated actions of Plaintiff's dogs scratching the doors, walls and moldings within the apartment thereby distributing lead-paint and dust throughout. At a minimum, a question of fact is raised under these facts, precluding a grant of summary judgment.

## CONCLUSION

For all of the above reasons, there being numerous genuine issues of material fact, Plaintiffs' motion for summary judgment must be dismissed.

Dated:  Brooklyn, New York
        February 16, 2015

By: _____
Roger V. Archibald, Esq.
ROGER V. ARCHIBALD, PLLC
Attorney for Defendant
26 Court Street, Suite 711
Brooklyn, New York 11242
(718) 237-1111


To:   Stephen M. Cantor, Esq.
      STEPHEN M. CANTOR, P.C.
      Attorney for Plaintiff
      325 Broadway, Suite 502
      New York, NY 10007
      (212) 732-8456