

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 1 0 2015 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

G.M.M., a minor child by his mother and
natural guardian, NIKI HERNANDEZ-
ADAMS, and NIKI HERNANDEZ-ADAMS,
individually,

                              Plaintiffs,

– against –

MARK KIMPSON,

                              Defendant.

**JURY INSTRUCTIONS**

13-CV-5059

**Jack B. Weinstein, Senior United States District Judge:**

<u>**Table of Contents**</u>

I.   INTRODUCTION ...................................................................................................2

II.  GENERAL RULES ...............................................................................................2
     A.  Role of the Court and of the Jury ...................................................................2
     B.  All Persons Equal Before the Court .............................................................3
     C.  Claims and Burden of Proof ...........................................................................3
     D.  Unanimity of Decision....................................................................................3
     E.  Evaluation of the Evidence ...........................................................................3
     F.  Witnesses ......................................................................................................4
         1.  General Principles....................................................................................4
         2.  Opinion Testimony ..................................................................................5
         3.  Testimony of Out-of-Court Declarants ....................................................5
         4.  Depositions .............................................................................................5
     G.  Stipulations ...................................................................................................6

III. PLAINTIFFS' CLAIMS .........................................................................................6
     A.  New York City Childhood Lead Poisoning Prevention Act..........................7
     B.  Federal Residential Lead-Based Hazard Reduction Act ............................10
     C.  Negligence ..................................................................................................12
     D.  New York Real Property Law Section 235-b ..............................................13

IV. DAMAGES............................................................................................................14
     A.  Compensatory Damages ..............................................................................14
     B.  Loss of Rental Property Value ....................................................................17
     C.  Punitive Damages ........................................................................................18

V.  CONCLUDING REMARKS ..................................................................................18

VI. VERDICT SHEET .................................................................................................19



COURT'S
EXHIBIT NO. 11
IDENTIFICATION/EVIDENCE
DKT.# 13-CV-5059
DATE: 07/10/15

## I.     INTRODUCTION

Members of the jury:

I will instruct you on the law.  It is your duty to follow these instructions.  My instructions will be in three parts.

*First*, I will instruct you regarding the general rules that define and govern the duties of a jury in a civil case.

*Second*, I will describe the specific elements that the plaintiffs must prove with respect to their claims to warrant a finding of liability.

*Third*, I will give you guidance regarding your deliberations.

Read these instructions along with me.  You may take them into the jury room.

## II.    GENERAL RULES

### A.  Role of the Court and of the Jury

You are the sole judges of the facts.  Decide which of the witnesses you believe, what portion of their testimony you accept, and how much weight to give to it.

I have no view regarding the liability of the defendant or of damages, if any, that should be awarded to the plaintiff.  Nothing that I have said or done should be used by you to infer that I have such a view.

Do not discuss this case *except* with each other in the jury room when all of you are assembled.  Do not do *any* research of your own by computer or otherwise.

Your verdict must be based exclusively on the evidence or lack of evidence in the case and the law as I explain it to you.  Do not consider any personal feelings that you may have about race, religion, national origin, ethnic background, gender, or age.  Follow the law as I give it to you.

### B. All Persons Equal Before the Court

No party is entitled to any sympathy or favor. All parties and witnesses are equal before this court.

### C. Claims and Burden of Proof

When a party has the burden to prove something, it must be established by a preponderance of the evidence. That means that the party's claim on that issue must be shown to be more probably true than not true. If it is equally probably true and not probably true, then the burden of proof has not been met.



In determining whether any fact in issue has been proved, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits, regardless of who may have introduced them.

### D. Unanimity of Decision

Your decision on any question on the verdict sheet must be unanimous. All of you must agree on the answer to any question on the verdict sheet.

### E. Evaluation of the Evidence

You will have a list of witnesses. Ask for a transcript of any part of the testimony that you wish to see. Try to be specific. You will have a list of admitted exhibits; you may ask for any or all of them.

Communicate with me in writing to ask for any evidence, help on the law, or any other matter. Give a note with your request to the Marshal.

During the trial, objections were raised and rulings made. Draw no inferences from the frequency of objections or from whether objections were sustained or overruled. Where an

objection to a question was sustained, disregard the question and draw no inferences from its wording. Where testimony or a document was stricken, disregard it.

On occasion, I gave limiting instructions on how evidence could be used. Follow those instructions.

Give the evidence such weight as you think it deserves. Analyze the evidence dispassionately, rationally, and without prejudice or emotion. You may consider evidence, in support or against, on any issue no matter who introduced it.

You may draw reasonable inferences from the evidence. Testimony from the witnesses and the exhibits are evidence. A lawyer's questions without an answer, arguments, and the opening and closing statements are not evidence.

### F. Witnesses

#### 1. General Principles

Decide which testimony to believe and which not to believe. Consider each witness's demeanor and manner of testifying; the opportunity he or she had to see, hear, and know about the events described; the witness's ability to recall and describe those events; the reasonableness of the testimony in light of all the other evidence in the case; and the interest of a witness in the outcome of the trial. Consider whether part of a witness's testimony was contradicted or supported by other testimony, by what that witness said or did on a prior occasion, and by the testimony of other witnesses or by other evidence.

If you find that a witness has willfully testified falsely regarding an important matter, you may disregard the entire testimony. Or you may accept as much of the testimony as you find true and disregard what you find false. A witness may have been mistaken or may have lied in part, while having been accurate and truthful with respect to other parts.

4

## 2.  Opinion Testimony

Experts can give opinions.  They are witnesses who have acquired learning in a specialized area of knowledge by education, experience, or training.  They are permitted to give their opinions on matters in which they have special knowledge and to give the reasons for their opinions.  They may assist you in understanding the evidence and in reaching your independent decision on the facts.

You should judge the credibility of expert opinion testimony in the same way that you judge the testimony of any other witness.  In weighing an expert's testimony, you should consider the factors that generally bear upon the credibility of a witness, as well as the expert witness's education, training and experience, the soundness of the reasons given for the opinion, and all other evidence in the case.  You should also consider whether the factual assumptions on which the expert relied were proven.

## 3.  Testimony of Out-of-Court Declarants

You have heard evidence concerning what people declared about events when they were outside the courtroom.  You are entitled to consider these declarations as evidence.  In evaluating these declarations, remember that these individuals were not cross-examined before you when the declaration was made.  In considering what weight to give such declarations, try to apply the same credibility tests that you apply with respect to individuals who have made statements under oath in court.

## 4.  Depositions

Some of the testimony before you is in the form of depositions.  In a deposition, the attorneys for one side may question a witness or an adverse party under oath before a court stenographer prior to trial without a judge being present.  Each side is entitled to take

depositions. Weigh the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.

### G. Stipulations

The parties have entered into stipulations. Accept any matter stipulated as true.

## III.    PLAINTIFFS' CLAIMS

G.M.M. and his mother, Niki Hernandez-Adams, are the plaintiffs in this case. They are both former tenants of the basement apartment located at 490 Macdonough Street, Brooklyn, New York 11233. They allege that defendant Mark Kimpson, their former landlord and the former owner of 490 Macdonough Street, is liable for G.M.M.'s elevated blood-lead levels, allegedly first discovered in the then one-year old infant by his pediatrician in August of 2012.

The parties have stipulated to the following facts:

*First*, that 490 Macdonough Street is a pre-1960 multiple dwelling unit and qualifies as target housing under both city and federal law.

*Second*, that Natalie Cosby, an employee of Douglas Elliman Real Estate, showed the apartment to Mrs. Hernandez-Adams, one of the plaintiffs, and introduced her to defendant Kimpson.

*Third*, that Ms. Cosby was present with Mrs. Hernandez-Adams and the defendant at the lease signing of the apartment.

*Fourth*, that Mrs. Hernandez-Adams and the defendant signed a formal one-year lease, scheduled to begin on May 13, 2011 and end on May 31, 2012.

*Fifth*, that child-plaintiff G.M.M. was born on August 1, 2011, when his parents were tenants of the basement apartment located at 490 Macdonough Street.

*Sixth*, that a lead-based paint hazard means any paint or other similar surface-coating material containing more than 0.5% of metallic lead, including lead-contaminated dust.

6

Plaintiffs bring an action, consisting of *four* distinct claims, against the defendant.

*First*, they claim that the defendant violated the New York City Childhood Lead Poisoning Prevention Act.

*Second*, they claim that he violated the Federal Lead-Based Paint Hazard Reduction Act.

*Third*, they bring a negligence claim.

*Fourth*, a claim is brought under New York's Real Property Law section 235-b.

The defendant denies these claims, arguing that he sufficiently encapsulated the hazardous lead paint in the apartment. He contends that (1) the plaintiffs' dogs severely scratched the walls and the moldings in the apartment and they are to blame for releasing lead dust into the basement apartment of 490 Macdonough Street; and (2) the cognitive and behavioral difficulties infant G.M.M. experienced after his birth, and continues to experience, resulted from one or more other medical conditions.

## A. New York City Childhood Lead Poisoning Prevention Act

This claim is brought under New York City's Local Law No.1 (2004), N.Y. Admin. Code §§ 27-2056.1 *et seq.* The legislation reads in relevant part:

> [Code § 27-2056.3. Owners' responsibility to remediate.]
> The existence of a lead-based paint hazard in any multiple dwelling where a child of applicable age resides is hereby declared to constitute a condition dangerous to life and health. An owner shall take action to prevent the reasonably foreseeable occurrence of such a condition and shall expeditiously remediate such condition and any underlying defect, when such underlying defect exists.

> [Code § 27-2056.4.a–c. Owners' responsibility to notify occupants and to investigate.]
> In any dwelling unit in a multiple dwelling erected prior to January first, nineteen hundred sixty where a child of applicable age resides, and in any dwelling unit in a multiple dwelling erected on or after January first, nineteen hundred sixty and before January first, nineteen hundred seventy-eight where a child of applicable



age resides and the owner has actual knowledge of the presence of lead-based paint, and in common areas of such multiple dwellings, the owner shall cause an investigation to be made for peeling paint, chewable surfaces, deteriorated subsurfaces, friction surfaces and impact surfaces. Such investigation shall be undertaken at least once a year and more often if necessary, such as when, in the exercise of reasonable care, an owner knows or should have known of a condition that is reasonably foreseeable to cause a lead-based paint hazard . . . .

No occupant . . . shall . . . refuse access to the owner at a reasonable time and upon reasonable prior notice to any part of the dwelling unit for the purpose of investigation and repair of lead-based paint hazards.

All leases offered to tenants or prospective tenants in such multiple dwellings must contain a notice, conspicuously set forth therein, which advises tenants of the obligations of the owner and tenant as set forth in this section. Such notice must be in . . . English and Spanish. The owner of such multiple dwelling shall provide the occupant of such multiple dwelling with [a lead-based paint hazard] pamphlet . . . .

[Code § 27-2056.5.a.  Presumption.]
In any multiple dwelling erected prior to January 1, 1960, it shall be presumed that the paint or other similar surface-coating material in any dwelling unit where a child of applicable age resides or in the common areas is lead-based paint. . . .

[Code § 27-2056.8.a.  Violation in a dwelling unit upon turnover.]
Upon turnover of any dwelling unit in a multiple dwelling erected prior to January 1, 1960 or a dwelling unit in a private dwelling erected prior to January 1, 1960 where each dwelling unit is to be occupied by persons other than the owner or owner's family, the owner shall within such dwelling unit have the responsibility to:
  (1)   remediate all lead-based paint hazards and any underlying defects, when such underlying defects exist;
  (2)   make all bare floors, window sills, and window wells in the dwelling unit smooth and cleanable;
  (3)   provide for the removal or permanent covering of all lead-based paint on all friction surfaces on all doors and door frames; and
  (4)   provide for the removal or permanent covering of all lead-based paint on all friction surfaces on all windows, or provide for the installation of replacement window

8

channels or sides on all lead-based painted friction surfaces on all windows.

[Code § 27-2056.17. Record keeping requirements.]
The owner of any multiple dwelling . . . that performs any work pursuant to this article shall retain all records relating to such work for a period of no less than ten years from the completion date of such work. . . .



Plaintiffs have the burden of proof on this claim. They must prove the following *three* elements:

*First*, that the defendant had constructive notice of the hazardous lead condition present in the basement apartment of 490 Macdonough Street. Because the alleged lead poisoning in this case occurred to an infant under the age of six who resided in the apartment, "constructive notice" is presumed. It is stipulated by the parties that this element is satisfied.

*Second*, that the defendant did not take "reasonable steps" to remedy the hazardous lead condition. "Reasonable steps," as the statute explains, include (1) remediating all lead-based paint hazards and any underlying defects; (2) making all bare floors, window sills, and window wells in the dwelling unit smooth and cleanable; (3) providing for the removal or permanent covering of all lead-based paint on all friction surfaces of doors and door frames; and (4) either providing for the removal or covering of all lead-based paint on all friction surfaces of all windows, or providing for the installation of replacement window channels or sides on all lead-based painted friction surfaces of all windows. Complete gut or other adequate renovation of the building unit is also considered reasonable.

The key question you must answer is: Under the city statute, did the defendant take reasonable steps to abate any lead-based paint hazard? If you conclude that he did, then you cannot find him liable for the infant plaintiff's elevated blood-lead levels under the city statute.

*Third*, that the hazardous lead condition was the proximate cause of the infant plaintiff's injuries.  An injury is proximately caused by an act or failure to act whenever the act or omission played a substantial part in bringing about or actually causing the injury, and that injury was the direct or a reasonably probable consequence of the act or omission.  There can be more than one proximate cause.  To recover damages, the plaintiffs have the burden of proving that the child-plaintiff suffered an injury and that the injury would not have occurred without the wrongful conduct or omission of the defendant.

**B.  Federal Residential Lead-Based Hazard Reduction Act**

This claim is brought under section 4852d of title 42 of the United States Code.  The statute reads in relevant part:

> [B]efore the . . . lessee is obligated under any contract to . . . lease the housing, the . . . lessor shall—
>
> provide the . . . lessee with a lead hazard information pamphlet . . . [; and]
>
> disclose to the . . . lessee the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing and provide to . . . lessee any lead hazard evaluation report available . . . .
>
> . . .
>
> The Lead Warning Statement shall contain the following text printed in large type on a separate sheet of paper attached to the contract:
>
> "Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's

10

possession and notify the buyer of any known lead-based paint hazards.   A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase."

. . .

Whenever a . . . lessor has entered into a contract with an agent for the purpose of . . . leasing a unit of target housing, the regulations promulgated under this section shall require the agent, on behalf of the . . . lessor, to ensure compliance with the requirements of this section.

Plaintiffs have the burden of proof on this claim.  They must prove the following *four* elements:

*First*, that they were in fact lessees.  This element has been stipulated to by the parties.

*Second*, that the leased property is considered "target housing" – *i.e.*, it was built prior to 1978.  This element is satisfied by stipulation.

*Third*, that the lease contract was signed after October 28, 1995.  This element is satisfied by stipulation.

*Fourth*, that the defendant was a lessor who "knowingly" failed to make proper disclosures.  Knowingly is to be construed as meaning that the defendant was aware of his conduct and did not perform it merely through ignorance, mistake, or accident.

In order to prevail on this claim, the plaintiff-mother must establish that the defendant knew that there was lead-based paint or lead-based paint hazards on the property and failed to disclose such information to her.

In considering whether defendant provided false assurances to the plaintiff, you must reflect on the fact that the defendant does not have a positive obligation to conduct any evaluation of the property or lead abatement activities under the federal statute.

11

## C. Negligence

Negligence is lack of ordinary care.  It is a failure to use the degree of care that a reasonably prudent person would have used under the same circumstances.  Negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances, or, from failing to do an act that a reasonably prudent person would have done under the same circumstances.

Plaintiffs have the burden of proof on this claim.  They must prove the following *three* elements:

*First*, that the defendant had notice of a lead hazard condition in the apartment and had an opportunity to remedy the condition.  This element is satisfied if it can be established that the defendant (1) retained the right to enter the premises without the permission of the tenants, or before the tenants took possession of the apartment, and made any repairs; (2) knew or should have known that the apartment was constructed before 1960, a fact the parties have stipulated to; (3) was aware that paint was peeling on the premises, or was otherwise inadequate to protect the premises; (4) knew or should have known of the hazards of lead-based paint to infants; and (5) knew or should have known that an infant was, or would be, living in 490 Macdonough Street.

*Second*, that the defendant failed to remedy the hazardous lead condition.

*Third*, that the hazardous lead condition was the proximate cause of the infant plaintiff's injuries.  An injury or damage is proximately caused by an act or failure to act whenever the act or omission played a substantial part in bringing about or actually causing the injury, and that injury was the direct or a reasonably probable consequence of the act or omission.  There can be more than one proximate cause.  To recover damages, the plaintiffs have the burden of proving

12

that G.M.M. suffered an injury and that the injury would not have occurred without the wrongful conduct or omission of the defendant.

### D. New York Real Property Law Section 235-b

New York Real Property Law section 235-b provides an implied warranty of habitability in residential leases:

> [I]n every written or oral lease or rental agreement for residential premises the landlord or lessor shall be deemed to covenant . . . that the premises . . . are fit for human habitation . . . and that the occupants . . . shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety.

N.Y. Real Property Law § 235–b. The lease signed by the parties contained the following provision: "Landlord states that the Apartment and Building are fit for human living and there is no condition dangerous to health, life or safety."

Plaintiffs have the burden of proof on this claim. They must prove *two* elements:

*First*, that the landlord had notice of a condition dangerous, hazardous, or detrimental to the life, health or safety of the plaintiffs. The defendant was not required to ensure that the premises were perfect, but he was under an obligation to ensure that no conditions were present that would materially affect the life, health, or safety of a tenant.

*Second*, that the defendant had a reasonable time to repair the defect. Because it is asserted that the apartment was renovated prior to it being leased to Mrs. Hernandez-Adams, this element is satisfied.

## IV.   DAMAGES

If the plaintiffs have proven *any* of the claims by a preponderance of the evidence, you must determine the amount of fair compensation, if any, that they are owed.  You must determine the damages caused to the plaintiff-child, G.M.M., to be awarded to his mother, Mrs. Hernandez-Adams, his natural guardian.  And you must determine the independent damages suffered by the plaintiff-mother herself.

Do not infer that the plaintiffs are entitled to recover damages merely because I am instructing you on this issue.  It is exclusively your function to decide upon liability.

### A. Compensatory Damages

Compensatory damages are designed to restore plaintiffs to the same position they were in prior to the injury—that is, to compensate them for the damage suffered as a direct result of the defendant's wrongful conduct.  You may award compensatory damages only if the plaintiffs show that the injury suffered would not have occurred without the defendant's acts or omissions, that the defendant played a substantial part in bringing about injury, and that the injury sustained was a direct or reasonably probable consequence of the defendant's acts or omissions. Compensatory damages are not allowed as punishment and must not be imposed or increased to penalize a defendant.

If you find that the defendant violated the New York City Childhood Lead Poisoning Prevention Act, the Federal Residential Lead-Based Paint Hazard Reduction Act, or was negligent, you must next consider whether the conduct of the plaintiff-child's mother, Mrs. Hernandez-Adams, was negligent, contributing to the cause of her son's injuries.  The burden is on the defendant to prove that Mrs. Hernandez-Adams contributed to causing the cognitive and behavioral challenges her son G.M.M. faces.  If you find that the plaintiff-mother's actions, or failures to act, contributed to causing her son's injuries, you must then *apportion* the damages

14

owed between Mrs. Hernandez-Adams and Mr. Kimpson.  Weighing all the facts and circumstances, you must consider the total liability, that is, the liability of both the plaintiff-mother and the defendant to determine what percentage of liability is attributable to each.  The total of these percentages must equal one hundred percent.

For example, if you should find that the defendant and the plaintiff-mother were equally at fault you would report that each was fifty percent responsible.  If you should find that one party was more responsible than the other, you would assign a higher percentage to that party and a lower percentage to the other, with the total of the percentages equaling one hundred percent.

G.M.M. is now four years old.  He has a statistical life expectancy of seventy years and a work-life expectancy of forty years.  These life and the work-life expectancy figures are not binding upon you.  You may consider them—together with your own experience and the evidence you have heard concerning the condition of the child-plaintiff's health, his habits, employment prospects, and activities—in deciding what his life and work-life expectancies are.

Three types of compensatory damages are available to the plaintiff-child:

(1)   loss of future earnings caused by his elevated blood-lead levels, *from* the age when, under the circumstances as you found them, he would begin to work *throughout* the period of time that the plaintiff-child can be expected to work;

(2)   medical and other related expenses caused by the elevated blood-lead levels, *from* age eighteen *throughout* the period of time that the plaintiff-child can be expected to live; and

15

  (3) mental anguish, pain and suffering, humiliation, indignity, and

    embarrassment, caused by the elevated blood-lead levels, _from_ the date he

    would be expected to have his own emotional damages _throughout_ the

    period of time that the plaintiff-child can be expected to live.

Mrs. Hernandez-Adams, the plaintiff-mother, is thirty-five years old. She has a statistical life expectancy of eighty years. This life expectancy figure is not binding upon you. You may consider it—together with your own experience and the evidence you have heard concerning the condition of the plaintiff-mother's health, her habits, employment, and activities—in deciding what her life expectancy is.

  Two types of compensatory damages are available to the plaintiff-mother:

  (1) medical and other related expenses caused by the elevated blood-lead levels in

    her son, _from_ the date of her son's diagnosis _to_ age eighteen; and

  (2) mental anguish, pain and suffering, humiliation, indignity, and

    embarrassment, caused by her child's lead poisoning, _from_ the date of her

    son's diagnosis _throughout_ the period of time that the plaintiff-mother can be

    expected to live.

  No evidence of the monetary value of intangible harms such as pain and suffering need be introduced into evidence. There is no exact standard for fixing the compensation to be awarded for this element of damages. Any award you make should be fair in light of the evidence presented at trial. In determining the amount of damages that you decide to award, you should be guided by dispassionate common sense. The burden is on the plaintiffs to prove each item of damages, by a reasonable method under the circumstances, and by a preponderance of the evidence.

Use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence. Do not award damages based on sympathy, speculation, or guess work. The law does not require that the plaintiffs provide the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

The plaintiffs have a duty under the law to "mitigate" their damages—to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damages caused by the defendant's actions or omissions. The defendant has the burden of proving that the plaintiffs failed to mitigate. If the defendant persuades you, by a preponderance of the evidence, that the plaintiffs failed to take advantage of one or more opportunities that were reasonably available to them, then you must reduce the amount of the plaintiffs' damages by the amount that could have been reasonably obtained if they had taken advantage of such an opportunity.

In assessing damages, you *may not* consider attorney fees, or the costs of litigating this case, or tax consequences, or possible governmental programs which may be available. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. You may not consider them. Tax consequences can play no part in your calculation of damages.

### B. Loss of Rental Property Value

If you find the defendant breached section 235-b of New York Real Property Law, you must determine the loss of rental property value suffered by Mrs. Hernandez-Adams. This amount would be the difference between the fair market value of the premises if it had been as warranted, as measured by the rent reserved under the lease and the value of the premises during the period of the breach of the warranty of habitability.

### C. Punitive Damages

If you award compensatory damages, you may award additional punitive damages if you find that the defendant engaged in extraordinary misconduct. You may do so to serve as an example or warning to others who might otherwise engage in similar conduct.

If you find in favor of the plaintiffs and against the defendant, and if you find that that the defendant acted so maliciously, wantonly, or oppressively as to warrant an award of punitive damages, you may make such an award. To justify an award of punitive damages, the defendant's misconduct must be based upon a reckless or callous disregard of the rights of the plaintiffs, or a gross indifference towards them. You may also award punitive damages if the defendant acted to punish the plaintiffs out of ill will or spite.

## V.   CONCLUDING REMARKS

Do not communicate with anyone outside the jury room except the court about your deliberations, or about anything else regarding this case. You may send a note to me, signed by your foreperson, through the Marshal to ask for help on the law or for any other assistance.

Discuss the issues with respect for each other. Do not hesitate to change your mind after considering each matter. Each of you is individually responsible for your vote.

If you are divided, do not report how the vote stands. If you have reached a verdict, do not report what it is to anyone until you are asked in open court. Inform the court when you have reached a verdict; do not inform me what your verdict is.

Render your verdict without fear, without favor, without prejudice, and without sympathy.

Follow all my instructions on all issues.

18

## VI.   VERDICT SHEET

### (Page 1 of 7)

### <u>COUNT 1:  New York City Childhood Lead Poisoning Prevention Act</u>

1.   Did the defendant violate the New York City Childhood Lead Poisoning Prevention Act?

YES __X__          NO _____

(If you answered "no" to Question 1, go to Count 2.)

2.   Was the defendant's violation of the statute a substantial factor in causing the child-plaintiff's cognitive and behavioral injuries?

YES __X__          NO _____

3.   Was the plaintiff-mother negligent?

YES _____          NO __X__

4.   Was the plaintiff-mother's negligence a substantial factor in causing the child-plaintiff's cognitive and behavioral injuries?

YES _____          NO __X__

5.   What percentage of the child-plaintiff's injuries is attributable to the defendant and what percentage is attributable to the plaintiff-mother?

Defendant __100__ %

Plaintiff-Mother __0__ %

19

**(Page 2 of 7)**

## COUNT 2:  Federal Residential Lead-Based Paint Hazard Reduction Act

1.      Did the defendant violate the Federal Residential Lead-Based Paint Hazard Reduction

Act?

YES _____              NO **✗**\_\_\_\_

> If you answered "no" to Question 1, go to Count 3.

2.      Was the defendant's violation of the statute a substantial factor in causing the child-

plaintiff's cognitive and behavioral injuries?

YES _____              NO _____

3.      Was the plaintiff-mother negligent?

YES _____              NO _____

4.      Was the plaintiff-mother's negligence a substantial factor in causing the child-plaintiff's

cognitive and behavioral injuries?

YES _____              NO _____

5.      What percentage of the child-plaintiff's injuries is attributable to the defendant and what

percentage is attributable to the plaintiff-mother?

Defendant_____%

Plaintiff-Mother_____%

**(Page 3 of 7)**

**COUNT 3:  Negligence**

1.    Was defendant negligent?

                                YES __X__                      NO _____

**If you answered "no" to Question 1, go to Count 4.**

2.    Was the defendant's negligence a substantial factor in causing the child-plaintiff's cognitive and behavioral injuries?

                                  YES __X__                      NO _____

3.    Was the plaintiff-mother negligent?

                                  YES _____              NO __X__

4.    Was the plaintiff-mother's negligence a substantial factor in causing the child-plaintiff's cognitive and behavioral injuries?

                                  YES _____              NO __X__

5.    What is the percentage of fault attributable to the defendant and what percentage of fault is attributable to the plaintiff-mother?

                              Defendant __100__ %

                              Plaintiff-Mother __0__ %

21

(Page 4 of 7)

### COUNT 4:  Breach of New York Real Property Law Section 235-b

Did the defendant breach section 235-b of New York's Real Property Law?

YES $\times$          NO _____

**(Page 5 of 7)**

## Damages

*If you answered "No" to all of the above questions, do not continue to the following questions. If you answered "Yes" to any of the above questions, continue to the following questions.*

***You are instructed to disregard the percentage of fault attributable to the defendant and the plaintiff-mother in fixing damages. The court will determine the damages to award to the plaintiffs based upon the percentage of fault attributable to each party.***

Compensatory Damages Awarded to G.M.M.

(1) What *loss of future earnings* damages is G.M.M. entitled to, if any, *from* the age of

when, under the circumstances as you found them, he would begin to work,

*throughout* the period of time he can be expected to work?

$ _____ 1.5 million _____

(2) What *medical and other related expenses* damages is G.M.M. entitled to, if any, *from*

the age of eighteen *throughout* the period of time that he can be expected to live?

$ _____ 181 thousand _____

(3) What *emotional* damages is G.M.M. entitled to, if any, *from* the age he would be

expected to have his own emotional damages, *throughout* the period of time he can be

expected to live?

$ _____ 200 thousand _____

23

**(Page 6 of 7)**

*If you found defendant liable for Count 1 or Count 3 ~~or Count 4~~, consider whether the child-plaintiff is entitled to punitive damages.  <u>Punitive damages are not to be considered with respect to Count 2</u>* OR 4

<u>Punitive Damages Awarded to G.M.M.</u>

What *punitive* damages is the child-plaintiff, G.M.M., entitled to, if any?

$_____ None

**(Page 7 of 7)**

Compensatory Damages Awarded to Mrs. Hernandez-Adams

(1) What *medical and other related expenses* damages is Mrs. Hernandez-Adams entitled

to, if any, *from* the date of her son's diagnosis *to* age eighteen?

$ _____17 thousand_____

(2) What *emotional* damages is Mrs. Hernandez-Adams entitled to, if any, *from* the date

of her son's diagnosis *throughout* the period of time she can be expected to live?

$ _____100 thousand_____

Loss of Rental Property Value Awarded to Mrs. Hernandez-Adams

What *loss of rental property value* damages is the plaintiff-mother, Mrs. Hernandez-

Adams, entitled to, if any?

$ _____7 thousand_____

*If you found defendant liable for Count 1 or Count 3 ~~or Count 4~~, consider whether the plaintiff-
mother is entitled to punitive damages.  Punitive damages are not to be considered with respect
to Count 2 ℴ Count 4*

Punitive Damages

What *punitive* damages is the plaintiff-mother, Mrs. Hernandez-Adams, entitled to, if

any? $ _____ None_____

Dated: July **10**, 2015
Brooklyn, New York

_L J Squter_
Signature of the Jury Foreperson

25